UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

MENALCO, FZE, et al.,

        Plaintiffs,

v.

ROBERT GORDON BUCHAN, et al.,

        Defendants.

2:07-CV-01178-PMP-PAL

ORDER

Presently before the Court is Defendants Convergence Capital Limited's, Christopher Ernest Eddy's, and Timothy Hanley Koster's Renewed Motion to Dismiss Pursuant to FRCP 12(b)(2) or, Alternatively, for Forum Non Conveniens (Doc. #162), filed on October 8, 2008. Plaintiffs filed an Opposition (Doc. #169) on October 24, 2008. Defendants filed a Reply (Doc. #193) on January 1, 2009.

**I. BACKGROUND**

Plaintiff The International Investor ("TII") is a Kuwaiti corporation which wholly owns Plaintiff Menalco, FZE ("Menalco"), a United Arab Emirates limited liability corporation. (Compl. (Doc. #1) at 2-3.) Plaintiffs are in the "loyalty" business, meaning they create systems to generate and retain customer loyalty to merchants and financial institutions through, for example, rewards programs. (Id. at 3.) Plaintiffs developed a loyalty program called "selektpoints" through which customers earn points for using a bank card and the points are redeemable for certain rewards, such as travel or special offers from various merchants. (Id. at 5.)

///

1          Plaintiffs obtained a license from Defendant Phoenix Technology Holdings, Inc.
2   ("Phoenix") to utilize certain patented software owned by Defendant Smart Chip
3   Technologies, d/b/a Schimatic Cash Transactions Network.com ("SCTN"). (Id. at 11.)
4   Phoenix is a Turks and Caicos Islands company with its principal place of business in either
5   Ontario, Canada or the Turks and Caicos Islands. (Id. at 4, Answer (Doc. #19) at 28.)
6   SCTN is a Nevada corporation with its principal place of business in Las Vegas, Nevada.
7   (Answer at 24.)
8          Plaintiffs allege they hired Defendant Mark Bone-Knell ("Bone-Knell"), the
9   Secretary of Defendant Convergence Capital Limited ("Convergence"), to file a patent in
10  the United Kingdom on Plaintiff Menalco's behalf. (Id. at 9.) Convergence is a United
11  Arab Emirates company. (Id. at 3.) Convergence's directors and major shareholders are
12  Defendants Timothy Koster ("Koster") and Christopher Eddy ("Eddy"). (Id.) Koster and
13  Eddy are residents of the United Arab Emirates. (Defs.' Mot. to Dismiss (Doc. #108), Exs.
14  A, B.) Koster and Eddy later approached Plaintiffs about Convergence purchasing the
15  selektpoints program. (Id. at 10.) Plaintiffs engaged in negotiations, but ultimately
16  declined to enter any agreement with Convergence. (Id.)
17         A few months after these negotiations concluded, Koster, Eddy, and two TII
18  employees, Defendant Edward Holmes ("Holmes") and Defendant Robert Buchan
19  ("Buchan"), allegedly formed Defendant Consumer Behavioral Data Corp. ("CBData"), a
20  Cayman Islands corporation. (Id. at 3, 11.) In June 2007, Phoenix and SCTN negotiated a
21  memorandum of understanding ("MOU") with CBData under which CBData would acquire
22  Phoenix and SCTN. (Id. at 12.) The MOU never was executed. (Answer at 54 & Ex. 13.)
23  The Complaint alleges Koster, Eddy, Holmes, and Buchan formed CBData to appropriate
24  the selektpoints program for themselves, and took such actions as trying to obtain patent
25  protection for the selektpoints business model under CBData's name. (Compl. at 11.)
26  Additionally, Plaintiffs contend these Defendants started to contact third parties on

CBData's behalf, marketing the selektpoints program as CBData's and seeking investors. (Id. at 12-14.) Plaintiffs filed suit in this Court on August 30, 2007, asserting against Defendants claims for federal and Nevada civil RICO violations, misappropriation of trade secrets, fraud, civil conspiracy to defraud, unjust enrichment, breach of contract, breach of fiduciary duty, and unfair competition.

Defendants Koster, Eddy, and Convergence previously moved to dismiss for lack of personal jurisdiction (Doc. #108). Defendants argued they had no Nevada contacts to support either general or specific jurisdiction. Defendants also argued that if the Court found personal jurisdiction existed, the Court nevertheless should dismiss under the doctrine of forum non conveniens. In support of their motion, Defendants Koster and Eddy filed declarations indicating they have never conducted business or owned property in Nevada, nor has Convergence. (Defs.' Mot. to Dismiss, Exs. A, B.) Additionally, Koster and Eddy averred that they have never entered into an agreement with SCTN, nor has Convergence. (Id.) In response, Plaintiffs argued Defendants had engaged in significant activity directed at Nevada through their relationship with alleged co-conspirator SCTN. Plaintiffs also argued the Court should not dismiss on forum non conveniens grounds, as no available alternative forum existed, and Defendants had not shown the factors weighed in favor of dismissal. The Court denied Defendants' motion without prejudice to renew after the parties conducted jurisdictional discovery. (Mins. of Proceedings (Doc. #134).)

Defendants now renew their motion to dismiss, arguing Plaintiffs cannot demonstrate sufficient contacts with Nevada to support either general or specific personal jurisdiction. Plaintiffs respond that Defendants have had significant contacts with the forum through their efforts to purchase SCTN in furtherance of the conspiracy to misappropriate Plaintiffs' selektpoints program. Additionally, Plaintiffs argue Defendants obstructed jurisdictional discovery and failed to turn over discovery materials. Plaintiffs suggest the Court should infer that if Defendants had produced all relevant evidence, it

would establish Defendants' contacts with Nevada. Plaintiffs also contend Defendants engaged in a scheme in which they agreed to be sued as Cross-Defendants in this action. Plaintiffs argue that having agreed to be named in collusive claims in this Court, Defendants should not be permitted to claim lack of personal jurisdiction. Finally, Plaintiffs argue Defendants have abandoned the forum non conveniens argument, as Defendants did not argue it in their renewed motion to dismiss and did not correct the deficiencies this Court previously noted at the hearing on the prior motion.

Defendants reply that they did not willfully obstruct discovery, as they relied on their corporate secretary, Bone-Knell, to gather documents, and did not realize he had not provided all relevant emails. Additionally, Defendants argue they have not agreed to be Cross-Defendants in this action. On the merits, Defendants argue they did not know SCTN was a Nevada-based company, as the telephone numbers they were given for SCTN were Ontario, Canada numbers. Finally, Defendants contend they have not abandoned their forum non conveniens argument, and Dubai is an available alternative forum.

**II. DISCUSSION**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process. Id. The Court must analyze whether personal jurisdiction exists over each defendant separately. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003).

Where the issue is before the Court on a motion to dismiss based on affidavits and discovery materials without an evidentiary hearing, the plaintiff must make "a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid

4

1  dismissal." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114,
2  1119 (9th Cir. 2002). The Court accepts as true any uncontroverted allegations in the
3  complaint and resolves any conflicts between the facts contained in the parties' evidence in
4  the plaintiff's favor. Id. However, for personal jurisdiction purposes, a court "may not
5  assume the truth of allegations in a pleading which are contradicted by affidavit."
6  Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir. 1992) (quotation
7  omitted).
8        Subject matter jurisdiction in this case is predicated both on a federal question
9  and diversity. Where subject matter jurisdiction is based on a federal question, "the
10 exercise of personal jurisdiction over a non-resident defendant must be authorized by a rule
11 or statute and consonant with the constitutional principles of due process." Glencore Grain,
12 284 F.3d at 1123. Where subject matter jurisdiction is based on diversity, "a federal court
13 applies the personal jurisdiction rules of the forum state provided the exercise of
14 jurisdiction comports with due process." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir.
15 1986). However, "federal law is controlling on the issue of due process under the United
16 States Constitution." Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1286 n.3
17 (9th Cir. 1977); see also Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1110 (9th Cir. 2002).
18       To satisfy federal due process standards, a nonresident defendant must have
19 "minimum contacts" with the forum state so that the assertion of jurisdiction does not
20 offend traditional notions of fair play and substantial justice. Pebble Beach Co., 453 F.3d at
21 1155 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)). A federal district
22 court may exercise either general or specific personal jurisdiction. See Helicopteros
23 Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).
24       To establish general personal jurisdiction, the plaintiff must demonstrate the
25 defendant has sufficient contacts to "constitute the kind of continuous and systematic
26 general business contacts that 'approximate physical presence.'" Glencore Grain, 284 F.3d

at 1124 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000), modified, Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc)). Courts consider such factors as whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. Bancroft, 223 F.3d at 1086. "[A] defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." Glencore Grain, 284 F.3d at 1123 (citing Helicopteros, 466 U.S. at 415 n.9).

A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. Pebble Beach Co., 453 F.3d at 1155-56. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first prong of the "minimum contacts test," the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum." Pebble Beach Co., 453 F.3d at 1155. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." Id. Evidence of direction usually consists of conduct taking place outside the forum that the defendant directs at the forum. Id. at 1155-56.

The purposeful direction aspect of the first prong is satisfied when a foreign act is both aimed at and has effect in the forum. Id. In other words, the defendant "must have (1)

6

committed an intentional act, which was (2) expressly aimed at the forum state," and (3) caused a jurisdictionally sufficient amount of harm to be suffered in the forum state. Id.; Yahoo! Inc., 433 F.3d at 1207. To satisfy the second element of this test, the plaintiff must establish the defendant's conduct was "expressly aimed" at the forum; a "mere foreseeable effect" in the forum state is insufficient. Id. The express aiming requirement is satisfied "'when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Menken v. Emm, 503 F.3d 1050, 1059 (9th Cir. 2007) (quoting Dole Food Co., Inc., 303 F.3d at 1111); see also Bancroft, 223 F.3d at 1087.

The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action is measured in terms of "but for" causation. Bancroft, 223 F.3d at 1088. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (quotation omitted).

**A. General Jurisdiction**

Plaintiffs have failed to establish a prima facie case that Defendants have continuous and systematic contacts with Nevada to support general jurisdiction. Plaintiffs present no evidence Defendants have made sales in Nevada, solicited or engaged in business here, or served the state's markets. Defendants have not designated an agent for service of process or held a license in the state. Defendant Convergence is not incorporated in Nevada.

Plaintiffs only evidence related to systematic contacts with the state consists of Defendants' communications with SCTN agent Nik Koriakinitis and Phoenix principal Miki Radivojsa related to CBData possibly purchasing SCTN. While Defendants' efforts at negotiating CBData's purchase of SCTN may qualify as attempts to do business with

Nevada, they do not support a finding that Defendants were doing business in Nevada sufficient to approximate physical presence in the forum for general jurisdiction purposes. See Bancroft, 223 F.3d at 1086 (distinguishing between doing business with California entities and doing business in the state).

Plaintiffs argue Defendants are subject to general personal jurisdiction because SCTN is their co-conspirator, and therefore SCTN's Nevada contacts are attributable to Defendants. The conspiracy theory of personal jurisdiction is based on the premise that a conspirator's acts in furtherance of a conspiracy are attributable to the other members of the conspiracy. Textor v. Bd. of Regents of N. Ill. Univ., 711 F.2d 1387, 1392 (7th Cir. 1983). Consequently, some courts attribute a conspirator's in-forum acts to his co-conspirators for personal jurisdiction purposes.

The United States Court of Appeals for the Ninth Circuit has not expressly accepted or rejected the conspiracy theory of personal jurisdiction. In its only published opinion addressing the issue, the Ninth Circuit noted that the two district court opinions upon which the plaintiff relied required the plaintiff either to allege specific overt acts in the forum state that furthered the conspiracy, or to allege substantial acts in furtherance of the conspiracy in the forum and that the co-conspirator knew or should have known his co-conspirator would perform those acts in the forum. Underwager v. Channel 9 Australia, 69 F.3d 361, 364 (9th Cir. 1995). Without expressing any opinion on the validity of the conspiracy theory of personal jurisdiction, the Ninth Circuit concluded the plaintiff alleged no facts suggesting a conspiracy and failed to dispute the defendants' claims that they did not know certain acts would take place in the forum. Id. The Court therefore affirmed the district court's dismissal for lack of personal jurisdiction. Id.

Since this case, the Ninth Circuit has noted that "a great deal of doubt" surrounds the conspiracy theory's legitimacy. Chirila v. Conforte, 47 F. App'x 838, 842, 2002 WL 31105149, at *3 (9th Cir. 2002) (unpublished). Although not in the personal jurisdiction

context, the Ninth Circuit has rejected a similar conspiracy theory in the venue context. Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491 (9th Cir. 1979) (rejecting conspiracy theory of venue).

It is unclear whether and under what conditions the Ninth Circuit would find it consistent with due process to attribute a conspirator's forum-related contacts to his co-conspirators for personal jurisdiction purposes. However, general due process considerations still would apply to outline the contours of a conspiracy theory of personal jurisdiction, if one is to exist at all.

As this Court recently held, to the extent a conspiracy theory of personal jurisdiction is viable, it must be limited to the context of specific jurisdiction and cannot support general jurisdiction. See In re Western States Wholesale Natural Gas Antitrust Litig., --- F. Supp. 2d ----, No. 2:03-CV-01431-PMP-PAL, Doc. #1530 at 24 (Feb. 26, 2009). "To hold otherwise would create satellite litigation regarding conspiracies completely unrelated to the underlying claims simply to establish personal jurisdiction. Such a trial-within-a-trial situation based on an already tenuous basis to attribute a third party's contacts to a defendant to support personal jurisdiction is untenable."[1] Id. The Court therefore concludes Plaintiffs have not established Defendants are subject to general personal jurisdiction in Nevada.

**B. Specific Jurisdiction**

Plaintiffs also have failed to establish a prima facie case of specific jurisdiction. Under the first prong of the minimum contacts test, Plaintiffs have not shown Defendants

---

[1] Plaintiffs cite Davis v. Eighth Judicial Dist. of State of Nevada, In and For County of Clark to argue Nevada's long-arm statute reaches out-of-state conspirators. 629 P.2d 1209, 1213-14 (Nev. 1981). Davis held specific jurisdiction existed where the plaintiff alleged the out-of-state defendants conspired to steal the Nevada assets of the estate of Howard Hughes and several related companies. Id. at 1211-1214. Davis did not suggest a conspiracy theory of personal jurisdiction would permit the exercise of general jurisdiction over an out-of-state defendant. Even if the Nevada long-arm statute would apply to Defendants under Davis, federal due process requirements still must be satisfied.

9

purposefully availed themselves of the privilege of conducting their activities in the forum. Evidence of availment is typically action taking place in the forum, and Plaintiffs have presented no evidence Defendants ever took any actions in Nevada. Plaintiffs' evidence shows email exchanges between Defendants and representatives of a Nevada resident that ultimately did not result in a completed contractual arrangement with the Nevada resident.

Plaintiffs also have not presented evidence Defendants purposefully directed their activities at Nevada. The express aiming needed to demonstrate purposeful direction requires Defendants to individually target a plaintiff who Defendants know to be a forum resident. Plaintiffs are not Nevada residents. Defendants therefore did not expressly aim their activity at Nevada to support specific personal jurisdiction. Even if the conspiracy theory of jurisdiction applied under these circumstances, Plaintiffs still would not be able to demonstrate the conspiracy was expressly aimed at a known forum resident because Plaintiffs are not Nevada residents. See id. at 25-26.

Plaintiffs contend this Court should infer from Defendants' lack of cooperation during jurisdictional discovery that had Defendants produced all communications between them and SCTN, that evidence would establish minimum contacts with Nevada to support personal jurisdiction. The Court already has awarded fees to Plaintiffs for Defendants' conduct during jurisdictional discovery. (Order (Doc. #154), Judgment (Doc. #175).) Further, no amount of discovery from Defendants would alter the fact that Plaintiffs are not forum residents and thus Defendants could not have directed their out-of-forum conduct at a known forum resident.

Finally, Plaintiffs argue Defendants have engaged in a scheme with Defendants/Cross-Plaintiffs Phoenix and SCTN to agree to be named as Cross-Defendants in this action. However, for specific jurisdiction, the Court does not consider events occurring after the Complaint is filed to determine whether Defendants are subject to

personal jurisdiction in this action. See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990); Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987).

Defendants Koster, Eddy, and Convergence are not subject to either general or specific jurisdiction in this Court. The Court therefore will grant these Defendants' motion to dismiss for lack of personal jurisdiction. As a result, the Court need not consider Defendants' forum non conveniens argument.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants Convergence Capital Limited's, Christopher Ernest Eddy's, and Timothy Hanley Koster's Renewed Motion to Dismiss Pursuant to FRCP 12(b)(2) or, Alternatively, for Forum Non Conveniens (Doc. #162) is hereby GRANTED. Defendants Convergence Capital Limited, Christopher Eddy, and Timothy Koster are hereby dismissed from this action for lack of personal jurisdiction.

DATED: March 16, 2009

_____
PHILIP M. PRO
United States District Judge